Sterling R. Threet
2345 East University, Suite 2
Mesa, AZ 85213
Telephone: 480 926-0500
Facsimile:  480 926-0800
Email: srthreet@azbar.org
ASB #013434
Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| SCOTT BIZAR, dba FANTASY GAMES UNLIMITED,<br><br>            Plaintiff,<br><br>v.<br><br>JEFFREY DEE; JACK HERMAN; MONKEY HOUSE GAMES, INC., a Florida Corporation; JOHN & JANE DOES,<br><br>            Defendant(s). | Case No:<br><br><br>**COMPLAINT** |

Plaintiff, Scott Bizar, for his Complaint, herein alleges as follows:

1.      Plaintiff is a resident of Arizona and at all times relevant to this action, was doing business as Fantasy Games Unlimited.

2.      Plaintiff is the successor in interest to all of the rights and claims of Fantasy Games Unlimited, Inc., a dissolved New York corporation.

3.      Defendant Jeffrey Dee ("Dee") is, upon information and belief, a resident of Texas.

4.      Defendant Jack Herman ("Herman") is, upon information and belief, a resident of Illinois.

5.      Defendant Monkey House Games, Inc. is, upon information and belief, a Florida Corporation.

6. This is a complaint for Trademark Infringement, Unfair Competition, and False Description arising under §§ 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114(1) (Trademark Infringement) and 1125(a) (Unfair Competition and False Description), for violation of the Arizona Registration and Protection of Trademarks and Service Marks Act, A.R.S. §44-1441 et. Seq.

7. The actions of Defendants alleged herein were directed at Plaintiff within this State and this Court has jurisdiction over the parties and subject matter of this action.

8. The actions of Defendants alleged herein were directed at Plaintiff and the State of Arizona has sufficient interest in this matter for venue to exist here.

9. On or about February 23, 1979, Fantasy Games Unlimited, Inc., a New York Corporation entered into an Agreement ("Agreement') with Dee and Herman regarding a work called "Villains & Vigilantes." (the "Work").

10. Dee and Herman granted Fantasy Games Unlimited, Inc. the exclusive right to publish the Work in book form in English in North America.

11. Pursuant to the Agreement, throughout its existence, Fantasy Games Unlimited, Inc. published the Work

12. Pursuant to the Agreement, Fantasy Games Unlimited, Inc. compensated Dee and Herman for the publication of the Work.

13. Plaintiff was the sole shareholder of Fantasy Games Unlimited, Inc.

14. Fantasy Games Unlimited, Inc. was dissolved.

15. At the moment before it was dissolved, Fantasy Games Unlimited, Inc. was a valid corporation, current on all taxes, assessments, fees and obligations required under New York Law and in good standing in all of its contractual obligations.

16. All of the assets, rights and claims of Fantasy Games Unlimited, Inc., including its tradename "Fantasy Games Unlimited" devolved to Plaintiff as the sole shareholder.

17. From and after the dissolution of Fantasy Games Unlimited, Inc., Plaintiff has done business under the name "Fantasy Games Unlimited."

18. From and after the dissolution of Fantasy Games Unlimited, Inc. Plaintiff has published the Work in a regular and ongoing basis.

19. From and after the dissolution of Fantasy Games Unlimited, Inc., Plaintiff has duly accounted for and compensated Defendants Dee and Herman pursuant to the terms of the Agreement.

20. From and after the dissolution of Fantasy Games Unlimited, Inc. Defendants Dee and Herman have accepted royalty payments under the Agreement from Plaintiff.

21. On a regular basis, Plaintiff has paid all royalties due Defendants Dee and Herman for publication of the Work and for publication of additional works entitled "Crisis at Crusader Citadel", "DNAgents Sourcebook" and "Villains & Vigilantes Rulebook."

22. Plaintiff and his predecessor, Fantasy Games Unlimited, Inc. have used the trademark "Villains and Vigilantes" in open commerce continuously since 1979.

## COUNT I

## DEFAMATION

23. All previous allegations are incorporated into this Count I.

24. On or about October 22, 2010, Plaintiff learned of information placed on an informational website sponsored by Wikipedia for Fantasy Games Unlimited (hereafter the "Website").

25. The Website contains an allegation that Fantasy Games Unlimited, Inc. was dissolved for nonpayment of taxes which caused contracts with various creators to terminate.

26. The allegation that Fantasy Games Unlimited, Inc. was dissolved for nonpayment of taxes and that it caused contracts with creators to terminate is false.

27. The Website contains the statement implying that Plaintiff takes unjustified positions in defending its property interests and improperly threatens legal actions.

28. The allegation that Plaintiff has taken unjustified positions and improperly threatened legal action is false.

29. The Website asserts that Plaintiff has a bad reputation for holding publishing works "in limbo" while demanding exorbitant licensing fees.

30. The allegation that Plaintiff holds works in limbo or demands exorbitant licensing fees is false.

31. The Website asserts that Plaintiff is seeking submissions of information to permit it to publish works for which he does not have rights.

32. The allegation that Plaintiff seeks submission of information to permit it to publish work for which it does not have rights is false.

33. The foregoing described allegations, when viewed individually and collectively and in connection with other statements and information contained in the Website, tends to blacken or besmirch the character and reputation of Plaintiff.

34. The Website information about Plaintiff tends to impeach the honesty, integrity or virtue of Plaintiff in his dealings with other persons in the publishing industry.

35. The information contained on the Website specifically identifies Plaintiff as the founder of Fantasy Games Unlimited, Inc., suggests that his continuing use of the trade name "Fantasy Games Unlimited" is improper, and can only be interpreted as relating to Plaintiff.

36. The false and misleading Website information about Plaintiff was contributed and published by Defendants.

37. The Website has been reviewed and read by persons other than Plaintiff within the State of Arizona and to a wide range of persons via the internet.

38. Upon information and belief, Defendants may have published other defamatory statements about Plaintiff in Facebook and on various media, websites, weblogs and online chat rooms that have been read by a wide range of persons within and outside Arizona via the internet.

39. Upon information and belief, the defamatory statements published by Defendants have been reviewed and read by persons other than Plaintiff.

40. The false and misleading information published by Defendants is libelous per se and actionable without proof of special damages because it attacks Plaintiff's reputation and integrity in business.

41. Defendants' defamatory statements have caused damage to Plaintiff, including emotional distress and injury to his reputation.

42. The actions of Plaintiff in publishing information on the Website were willful, malicious and done with an evil hand guided by an evil mind with the express intent to harm Plaintiff and his business relationships.

43. Plaintiff is entitled to general damages in an amount to be proven at trial and exemplary damages in an amount sufficient to punish Defendants for their bad conduct and to deter others from similar conduct.

## COUNT II

## COMMERCIAL DISPARAGEMENT

44. All previous allegations are incorporated into this Count II.

45. The publication of false or deceptive information by Defendants about Plaintiff pertained to Plaintiff's goods and his course of dealings with writers and artists in the publishing industry.

46. The publication of false or deceptive information about Plaintiff attacked the quality of his goods or services, and also the efficiency and integrity of his business dealings with writers and artists in the publishing industry.

47. The disparaging statements by Defendants on the Website, and upon information and belief in other places, about Plaintiff and his products are false and untrue.

48. By publishing the disparaging statements on the Website, and upon information and belief in other places, Defendants have published the disparaging statements to a wide range of people within and outside Arizona and particularly to persons who do or could have done business with Plaintiff.

49. As a result of the false or deceptive statements about Plaintiff, his capacity to negotiate contracts with writers and artists, and ability to develop and market new goods has been damaged.

50. Plaintiff is entitled to damages for his losses suffered from the disparaging comments published by Defendants.

## COUNT III

## Unfair Competition (Lanham Act- 15 U.S.C. 1114

51.     All previous allegations are incorporated into this Count III.

52.     Plaintiff owns the exclusive right to produce, market and sell the Work ("Villains & Vigilantes")  and the additional works entitled "Crisis at Crusader Citadel", "DNAgents Sourcebook" and "Villains & Vigilantes Rulebook" ( All of these works are collectively described as the "Marks")

53.     Defendants have attempted to thwart Plaintiff's ownership of the Marks by fling registration documents with the United States Copyright Office in July, 2011.    Upon information and belief, such registration has been duly challenged and will be denied.

54.     Upon information and belief, Defendants have used all or some part of the Marks in the publication or sale of products or services, and are continuing to use all or some part of the Marks in the publication and sale of products or services in commerce.

55.     The publication and sale of products using the Marks by Defendants is prohibited by the parties' Agreement.

56.     Notwithstanding demand by Plaintiff to cease and desist, Defendants have continued to wrongfully use Plaintiff's Marks.

57.     Use of the Marks by Defendants in commerce constitutes an infringement and is likely to cause confusion, mistake or deception in the minds of the public.

58.     Defendants' infringement constitutes a willful and malicious violation of Plaintiff's trademark rights, aimed at preventing Plaintiff from continuing to build a business around Marks that he has long possessed.

59. Defendants' use of the Marks comprises an infringement of Plaintiff's trademark and is likely to cause confusion, mistake and deception of the public as to the identity and origin of Plaintiff's goods, causing irreparable harm to Plaintiff for which there is no adequate remedy at law.

60. By reason of the foregoing acts, Defendants are liable to Plaintiff for trademark infringement under 15 U.S.C. § 1114.

## COUNT IV

## UNFAIR COMPETITION (LANHAM ACT, 15 U.S.C. 1125(a)

61. All previous allegations are incorporated into this Count IV.

62. Defendants' use of the Marks to promote, market, or sell products or services in direct competition with Plaintiff's products and services constitutes Unfair Competition pursuant to 15 U.S.C. § 1125(a).

63. By reason of the foregoing acts, Defendants are liable to Plaintiff for damages for trademark infringement under 15 U.S.C. § 1125(a).

## COUNT V

## UNFAIR COMPETITION-(A.R.S. §14-1441 et seq)

64. All previous allegations are incorporated into this Count V.

65. Defendants' use of the Marks is likely to cause confusion, mistake, and deception among consumers.

66. Defendants' unfair competition has caused and will continue to cause damage to Plaintiff, and is causing irreparable harm to Plaintiff for which there is no adequate remedy at law.

67. Pursuant to A.R.S. §44-1441, Plaintiff's Marks are in use in the ordinary course of trade within the State of Arizona and are distinctive and famous pursuant to A.R.S. §44-1448.01.

68. Defendants have willfully intended to cause dilution of Plaintiff's Marks.

69. Defendants have used the Marks or a mark similar to Plaintiff's Marks in connection with goods or services that are likely to cause confusion, mistake or deceive a person as to the origin, sponsorship or approval of the goods services or commercial activities of Plaintiff.

70. Defendants have reproduced, counterfeited, copied or colorably imitated Plaintiff's Marks in contravention of the law.

71. Defendant's actions discussed herein constitute unfair competition within the meaning of Arizona's Trademark and Service Mark protection laws, A.R.S. §44-1441 et seq.

72. Defendants have, upon information and belief, generated profits from their wrongful conduct described herein.

73. Plaintiff has been damaged by Defendant's wrongful use of his Marks.

74. Plaintiff's Marks have not been abandoned.

75. Plaintiff is entitled to preliminary and permanent injunctive relief ordering Defendant to cease this unfair competition, as well as disgorgement of all of Defendant's profits associated with this unfair competition, and payment of Plaintiff's costs in this action.

## COUNT VI

### Misappropriation

76. All previous allegations are incorporated into this Count VI.

**77.** Plaintiff has invested significant time, money, skill or effort to create a product of commercial value represented by the Marks.

78. Defendants have appropriated the value of the Marks.

79. Plaintiff has been injured as a result of Defendants' misappropriate of his Marks.

80.     Plaintiff is entitled to damages from the misappropriation in an amount to be proven a t trial.

## COUNT VII

## BREACH OF CONTRACT

81.     All previous allegations are incorporated into this Count VII.

82.     As successor in interest to the Agreement, Plaintiff is entitled to all the rights and privileges applicable to Fantasy Games Unlimited, Inc. associated with the Agreement.

83.     Defendants have breached their obligations under the Agreement.

84.     Plaintiff has been damaged by Defendants' breaches.

85.     Plaintiff has incurred legal fees and costs for which he is entitled to recover under the Agreement or A.R.S. §12-341.01.  In the event of default, reasonable fees are not less than $3,500.00.

Therefore, Plaintiff requests judgment on its complaint against Defendants as follows:

1.      That Defendants. and their agents, officers, employees, representatives, successors, assigns, attorneys and all other persons acting for, with, by, through or under authority from Defendant, and each of them, be preliminarily and permanently enjoined from:(a) using the following Marks:

    Villains & Vigilantes

    Crisis at Crusader Citadel

    DNAgents Sourcebook

    Villains & Vigilantes Rulebook

or any colorable imitation thereof; (b) using any trademark that imitates or is confusingly similar to or in anyway similar to Plaintiff's Marks, or that is likely to cause confusion, mistake,

Complaint- 10

Law Firm of Sterling R. Threet
D:\CLIENT FILES\BIZAR, SCOTT\COMPLAINT.doc

deception, or public misunderstanding as to the origin of Plaintiff's products or their connectedness to Defendant.

2.     That Defendant be required to file with the Court and serve on Plaintiff within thirty (30) days after entry of the Injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the Injunction;

3.     That Defendant be held liable for all damages suffered by Plaintiff resulting from the acts alleged herein;

4.     That Defendants be compelled to account to Plaintiff for any and all profits derived by it from its illegal acts complained of herein;

5.     That the Defendant be ordered to deliver up for destruction all books, manuals, magazines, containers, labels, signs, prints, packages, wrappers, receptacles, advertising, promotional material or the like in possession, custody or under the control of Defendant bearing a mark found to infringe Plaintiff's trademark rights, as well as all plates, matrices, and other means of making the same;

6.     That the Court declare this to be an exceptional case and award Plaintiff its full costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

7.     Awarding Plaintiff his legal fees and costs under the Agreement or A.R.S. §12-341.01.

8.     That the Court grant Plaintiff any other remedy to which it may be entitled as provided for in 15 U.S.C. §§ 1116 and 1117 or under Arizona law; and,

9.     For such and other further relief that the court deems just and proper

> /s/ Sterling R. Threet #013434
> Sterling R. Threet
> Attorney for Plaintiff