IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Scott Bizar, dba Fantasy Games Unlimited,<br><br>  Plaintiff/Counter Defendant,<br><br>     vs.<br><br>Jeffrey Dee, Jack Herman, Monkey House Games, Inc.,<br><br>Defendants/Counter-Plaintiffs. | CIV 11-02036 PHX MEA<br>CIV 11-02247 PHX MEA<br><br>ORDER |

All of the parties have acquiesced to the exercise of magistrate judge jurisdiction, including the entry of final judgment.[1]

**Procedural Background**

Plaintiff filed a complaint on October 19, 2011, alleging a cause of action for defamation, commercial disparagement, unfair competition, misappropriation, breach of contract, and two counts pursuant to the Lanham Act, i.e., for trademark infringement. Plaintiff also filed an amended complaint (Doc. 7) on October 19, 2011.

---

[1] On March 8, 2012, the Court dismissed Defendant Monkey House Games, Inc., based on Plaintiff's failure to serve this defendant within the time allowed by the Federal Rules of Civil Procedure. See Doc. 24.

Prior to the date Plaintiff initiated his action, on July 27, 2011, Defendants/Counter-Plaintiffs initiated a suit against Plaintiff in the United States District Court for the Middle District of Florida, alleging a cause of action for copyright infringement. On November 11, 2011, the matter was transferred to the United States District Court for the District of Arizona and assigned docket number CV 11-2247 DKD. In that matter Defendants were represented by counsel located in Florida.

Defendants/Counter-Plaintiffs Herman and Dee were served with Plaintiff's complaint on or about December 19 and December 20, 2011. The Clerk of the Court entered the default of Defendants/Counter-Plaintiffs Herman and Dee on January 13, 2012. See Doc. 16.

On January 23, 2012, ten days after the Clerk of the Court entered default against them, Defendants/Counter-Plaintiffs Herman and Dee, appearing pro se and intending to represent and act on behalf of Defendant Monkey House Games, Inc., filed a motion seeking to set aside the entry of default against each of the three defendants, citing Rule 55 and Rule 60(b), Federal Rules of Civil Procedure. See Doc. 17. In an order entered March 16, 2012, the Court denied the motion to set aside Defendants' default. In an order entered April 2, 2012, the Court consolidated docket number 11-2036 with 11-2247. See Doc. 26.

On July 11, 2012, the Court granted Plaintiff's motion for judgment by default with regard to Count I and Count II of the complaint, for defamation and commercial disparagement, and

denied the motion for judgment by default with regard to the other counts of the complaint. See Doc. 27. On September 25, 2012, the Court granted Plaintiff's motion for a hearing on the damages to be awarded on the judgment entered in favor of Plaintiff. The hearing was conducted on October 17, 2012; Plaintiff was represented by counsel at the hearing and Defendant Dee appeared pro se at the hearing. On October 26, 2012, and October 29, 2012, Plaintiff and Defendant Dee, respectively, docketed proposed findings of fact regarding damages upon default judgment. See Doc. 44 & Doc. 45.

**Standard**

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). Because the allegations in the complaint are taken as true upon the entry of judgment by default, injury is established and the plaintiff need prove only that the compensation sought relates to the damages that naturally flow from the pled injuries. See Wehrs v. Wells, 688 F.3d 886, 892-93 (7th Cir. 2012); e360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007); Philip Morris USA, Inc. v. Castworld Products, Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003).

"When a plaintiff prevails by default, he or she is not automatically entitled to the damages they originally demanded." Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd., 175 F.R.D. 658, 661 (S.D. Cal. 1997). If the facts necessary to determine damages are not contained in the complaint, or are legally insufficient, they will not be established by the defendants'

default. See Cripps v. Life Ins. Co. of N. Am., 980 F.2d 1261, 1267 (9th Cir. 1992). Additionally, "[a]s a general proposition, punitive damages cannot be awarded simply on the basis of the pleadings, but must instead be established at an evidentiary hearing held pursuant to Fed. R. Civ. P. 55(b)(2) because they clearly are not liquidated or computable." Comdyne I, 908 F.2d at 1152. "Plaintiff's burden in 'proving up' damages" after the entry of default judgment is "relatively lenient." Philip Morris USA, Inc., 219 F.R.D. at 498.[2]

Although the Court is not required to issue findings of fact as to liability, it must do so as to damages. See Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1414 (9th Cir. 1990). In determining a plaintiff's damages, a district court may rely on the declarations submitted by the plaintiff or conduct a full evidentiary hearing. See Fed. R. Civ. P. 55(b)(2).

**Analysis**

The essence of the disagreement between the parties is the ownership of trademark rights to a game concept called Villains and Vigilantes. In 1978 or 1979 Defendant Dee and Defendant Herman developed a concept and artwork for a role-playing game titled "Villains and Vigilantes." Defendants Herman and Dee entered into a contract granting Fantasy Games Unlimited, Inc. the exclusive right to publish the game; Fantasy

---

[2] "Entry of default judgment is not mandatory upon Plaintiff's request, and the court has discretion to require some proof of the facts that must be established in order to determine liability." Martino v. Chapman, 2008 WL 110948, at * 1 (D. Ariz. Jan.8, 2008) (quoting Apple Computer Inc. v. Micro Team, 2000 WL 1897354, at *3 n.5 (N.D. Cal. Dec. 21, 2000), citing 10A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2688 (3rd ed. 1998).

1  Games Unlimited, Inc. was later dissolved, although Plaintiff
2  has continued to do business as Fantasy Games Unlimited.
3      Plaintiff alleges in the amended complaint that in
4  October of 2010, Plaintiff learned of "information placed on an
5  informational website sponsored by Wikipedia for Fantasy Games
6  Unlimited," and that the information was untrue and disparaging.
7  Plaintiff alleges a cause of action based on defamation and
8  damages arising from lost commercial opportunity, damage to
9  Plaintiff's reputation, and emotional distress caused by
10 Defendants/Counter-Plaintiffs' publication of false information
11 disparaging Plaintiff on the Internet.  Plaintiff alleges his
12 emotional distress arose because Plaintiff had no means of
13 rebutting the disparaging information.  Plaintiff asserts that,
14 as a result of this publication of false information, Plaintiff
15 sustained financial damages of $40,000 to $50,000 over a period
16 of two years.
17     Plaintiff also alleges that, because of the statements
18 made by Defendants/Counter-Plaintiffs, he has had trouble
19 entering into contracts for other works over a period of two
20 years.  Plaintiff alleges lost opportunities to work with
21 writers and authors of games, resulting in economic loss.
22 Plaintiff contends that he was able to contract for eight new
23 products in 2010 and 2011, when he previously would produce
24 twelve new products per year.  Plaintiff argues that, as a
25 result of Defendants/Counter-Plaintiffs' acts, he has lost the
26 opportunity to profit from four products per year for two years,
27 with a lost net profit of approximately $5,000 per product.
28 Plaintiff further contends that, as a result of

Defendants/Counter-Plaintiffs' acts, he has lost revenue he would ordinarily receive from existing products.

### Plaintiff's allegations regarding damages

Count I of the Amended Complaint, on which judgment by default has been entered, alleges a cause of action for defamation. Plaintiff alleges damages including emotional distress and injury to his reputation. With regard to this count of the complaint, Plaintiff sought "general damages in an amount to be proven at trial and exemplary damages in an amount sufficient to punish Defendants...." Doc. 7 at 5-6.

Plaintiff valued his claim for emotional distress as approximately $40,000 to $50,000 over a period of two years. With regard to the injury to his reputation, Plaintiff alleges that he has lost opportunities with writers or authors as a result of the defamation, he has lost the opportunity to produce four new products per year, at a loss of $5,000 per product, resulting in lost opportunity costs of $40,000 over two years. Plaintiff further alleges that, as a result of Defendants' defamation, he lost revenue from existing products in the amount of approximately $12,000.

Count II of the complaint, on which judgment by default has been entered, alleges a cause of action for commercial disparagement. Plaintiff alleged that, as a result of false and deceptive statements, "his capacity to negotiate contracts with writers and artists, and ability to develop and market new goods has been damaged." Doc. 7 at 6. As evidence of lost contractual opportunity, Plaintiff presented at the hearing a proposed contract between Plaintiff and a California company

seeking to license games for video or computer use, including Villains and Vigilantes. Plaintiff asserts that the California company ceased communicating with Plaintiff and alleges that Defendants' disparaging statements about Plaintiff on the Internet were the reason this company ceased negotiating with Plaintiff. Plaintiff asserts that, as a result of the loss of this contract, he lost an advance payment of $20,000 and a total loss of $60,000 in expected royalties from this contract.

**Findings of Fact**

Defendants/Counter-Plaintiffs are liable to Plaintiff for defamation and commercial disparagement. Based on Defendants' default to these claims, Plaintiff has established that Defendants contributed and published false and misleading information about Plaintiff on websites and on weblogs. Defendants' publications included the false assertion that Fantasy Games Unlimited, Inc. was dissolved for nonpayment of taxes which caused contracts with various creators to terminate; the false assertion that Plaintiff takes unjustified positions in defending its property interests and improperly threatens legal actions; the false assertion that Plaintiff has a bad reputation for holding publishing works "in limbo" while demanding exorbitant licensing fees; the false assertion that Plaintiff is seeking submissions of information to permit him to publish works for which he does not have rights.

The publication of false or deceptive information by Defendants/Counter-Plaintiffs about Plaintiff pertained to Plaintiff's goods and his course of dealings with writers and artists in the publishing industry and disparaged the efficiency

and integrity of his business dealings with writers and artists in the publishing industry.

Based on the applicable liberal standard for "proving up" his damages, Plaintiff has demonstrated that, as a proximate cause of Defendants/Counter-Plaintiffs' defamatory statements, he has lost approximately $40,000 (the economic loss from losing the opportunity to contract for eight works at $5000 per work). Plaintiff has also demonstrated that, as a proximate cause of the defamatory statements, he has suffered a diminution of sales of current products.  He has proven that lost sales of the "Giant Series" of Villains and Vigilantes supplements was $8,000.00, that the lost sales from the Vigilantes International was $1,200.00, and that the lost sales from the PDF versions was $3,100.00.  Accordingly, Plaintiff has established additional damages of $12,300.

The Court finds that Plaintiff has not demonstrated that, as a proximate cause of the defamatory statements, he lost a contract with Big Ego Games resulting in a loss of $60,000.

The Court further finds that Plaintiff has not demonstrated damages of $50,000 from the emotional distress suffered as a result of this tort.  Plaintiff produces no evidence of lost income, physical symptoms, or costs of medical or psychological treatment as a result of the alleged emotional distress.

In additional to actual damages with regard to Count I, the amended complaint seeks "exemplary" damages in an amount sufficient to "punish" Defendants.

> Punitive damages are those damages "awarded in excess of full compensation to the victim in order to punish the wrongdoer and to deter others from emulating his conduct." Linthicum v. Nationwide Life Ins. Co., 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986). "In deciding whether punitive damages are awardable, the inquiry should be focused upon the wrongdoer's mental state." Id. []. "To recover punitive damages, a plaintiff must prove by clear and convincing evidence that the defendant engaged in aggravated and outrageous conduct with an 'evil mind,'" Hyatt Regency Phoenix Hotel Co. v. Winston & Strawn, 184 Ariz. 120, 132, 907 P.2d 506, 518 (App. 1995), that is, with intent "to injure or defraud, or deliberately interfere[ ] with the rights of others, 'consciously disregarding the unjustifiabl[y] substantial risk of significant harm to them.'" Id.[].
> Considering the nature of evidence and the higher burden of proof required for punitive damage awards, the making and preservation of a record, which is subject to appellate review, is preferred for cases in which punitive damages are sought, even in a default context. See Verde Ditch Co. v. James, 157 Ariz. 369, 373, 758 P.2d 144, 148 (App. 1988) (review of record, which included testimonial and documentary evidence, revealed substantial evidence to support punitive damage award in default judgment). We encourage that practice.

Hilgeman v. American Mortg. Sec., Inc., 196 Ariz. 215, 221-22, 994 P.2d 1030, 1036-37 (Ct. App. 2000).

The only evidence of Defendants' alleged malicious and evil-minded purpose behind the defamatory statements is Plaintiff's supposition and belief. Accordingly, the Court will not award exemplary or punitive damages.

**Rule 54(b) Certification**

This Order resolves entirely Plaintiff's Count I and Count II of the amended complaint only. The issues decided here are discrete and do not overlap with the remaining issues to be decided later in this lawsuit. The remaining claims of Plaintiff

against Defendants/Counter-Plaintiffs and the claims of Defendants/Counter-Plaintiffs against Plaintiff are not affected by this Order. Moreover, an immediate appeal of this Order would not threaten duplication of judicial work through repetitive appeals on related issues or transactions and may contribute to appellate economy by permitting review of this Order in conjunction with review of other Orders issued and certified as final today in this action on similar issues.

For these reasons, pursuant to Rule 54(b), Federal Rules of Civil Procedure 54(b), the Court finds no just reason for delay in the entry of final judgment and directs entry of final judgment against Defendants Herman and Dee and in favor of Plaintiff in the amount of $52,300 with regard to Count I and Count II of the amended complaint.

Therefore,

**IT IS ORDERED that** judgment in the amount of $52,300 is entered in favor of Plaintiff and against Defendants, as judgment with regard to Count I and Count II only of the amended complaint on which judgment by default has been entered.

DATED this 26th day of November, 2012.

_____
Mark E. Aspey
United States Magistrate Judge